FILED

2010 May-28  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS PORTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:09-cv-0845-AKK** |
| **AMERICAN CAST IRON PIPE** | ) | |
| **COMPANY and ROYCE** | ) | |
| **HANDLEY,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I. PROCEDURAL HISTORY

Plaintiff Thomas Porter ("plaintiff") filed this action against defendants

American Cast Iron Pipe Company ("ACIPCO") and Royce Handley ("Handley")

(collectively, "defendants") on April 30, 2009.  Doc. 1.[1]  Plaintiff alleges race

discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section

1981"), and age discrimination in violation of the Age Discrimination in

---

[1]Reference to a document number, ("Doc. ___"), refers to the number assigned to each
document as it is filed in the court's record.

1

Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[2]  *Id.*  Defendants moved for

summary judgment on all counts.  Doc. 34.  Plaintiff responded, (doc. 43),

defendants replied, (doc. 51), and plaintiff submitted a surreply, (doc. 52).

Defendants moved to strike the surreply as unauthorized.  Doc. 53.  For the

reasons set forth below, defendants' motion to strike is DENIED and motion for

summary judgment is GRANTED.

## II.  MOTION TO STRIKE

The Scheduling Order in this case expressly provides for an initial summary

judgment brief, a response, and a reply.  Doc. 8-1 at 1.  The Order further states:

"Any material submitted after the close of the submission schedule **WILL NOT**

**BE CONSIDERED IN RULING ON THE MOTION**."  *Id.* at 2 (emphasis in

original).[3]

Plaintiff argues that neither the Scheduling Order nor Federal Rule of Civil

---

[2]Since there is no individual liability under Title VII or the ADEA, the court grants Handley summary judgment on plaintiff's Title VII and ADEA claims.  *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995).  As to plaintiff's Section 1981 claim against Handley, plaintiff failed to present any evidence at all to prove that a basis exists for him to pursue a claim against Handley individually.  The evidence instead shows that Handley and another employee, Larry Mann, recommended another candidate for promotion, a separate selection committee reviewed all the candidates' information, and the committee made the ultimate selection decision.  Under these facts, plaintiff's claims against Handley fail.  For these reasons and those stated fully below, Handley is due summary judgment on all of plaintiff's claims.

[3]Although the court extended the parties' deadlines for their response and reply briefs, it did not otherwise alter the Scheduling Order.  Doc. 42.

Procedure 56 expressly prohibits him from filing a surreply without this court's prior permission. Doc. 54 at 1. Plaintiff is incorrect. First, the above language, which appears in bold and all caps on the Scheduling Order, clearly states that the court would not consider material submitted "after the close of the submission schedule," which closed when defendants filed their reply. Second, courts have interpreted Rule 56's silence with respect to surreplies to mean that such filings are *not* automatically permitted. *See Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). Further, surreplies should be permitted only when "a valid reason for such additional briefing exists" to avoid placing the court "in the position of refereeing an endless volley of briefs." *Id.* (internal quotation marks and citations omitted). For these reasons, the court normally does not allow surreplies. The court will make an exception here so that it can have the benefit of all of plaintiff's arguments in its analysis of this matter. Therefore, court DENIES defendants' motion to strike.

### III.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

As a preliminary matter, the court notes that plaintiff relies heavily on his

4

own affidavit, which is replete with legal conclusions and his own subjective views of the events at issue, often unsupported by specific facts.[4]  The  Eleventh Circuit has consistently held that "conclusory allegations without specific supporting facts have no probative value" and that a party resisting summary judgment "must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial."  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)); s*ee also Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir. 1983) (plaintiffs' subjective beliefs do "not constitute a material issue"); *Barnes v. Crowne Invs., Inc.*, 391 F. Supp. 2d 1108, 1117 (S.D. Ala. 2005) (plaintiff's declaration, which set forth her subjective beliefs but failed to provide specific facts, insufficient to create a genuine issue of material fact).  Therefore, while the court will consider specific facts alleged by plaintiff, it is precluded by

---

[4]Additionally, the court is further troubled that certain "facts" in plaintiff's affidavit are contradicted by other evidence.  For example, plaintiff states: "In 1998, ACIPCO promoted . . . Handley to Assistant Manager without the use of the targeted selection interview process or formally announcing the vacancy or creating an applicant pool . . . ."  Doc. 46-7 at 7. Defendants, however, presented targeted selection for interview guides for plaintiff and Handley for the 1998 promotion, demonstrating not only that ACIPCO employed the targeted selection process during that interview, but also that plaintiff interviewed for the position. *See* Doc. 53-1. Plaintiff acknowledges his mistake, but merely states that "[t]his is one of the few instances of the Plaintiff forgetting or confusing an issue of fact that occurred over Ten (10) years ago."  Doc. 54 at 2.  Unfortunately, this was not an isolated occurrence.  Plaintiff's briefs and affidavit are replete with statements that have no evidentiary support.

established precedent from crediting his legal conclusions, subjective beliefs, or unfounded conjectures.

## IV.   FACTUAL BACKGROUND

### A.   *Plaintiff's History with ACIPCO*

Plaintiff, who is African-American and was born in 1955, is a Cost Accountant employed in ACIPCO's Cost Accounting Department.  Doc. 36-1 at 3 (Dep. p. 7).  He started at ACIPCO in 1974 as a janitor while preparing to go to college.  *Id*.  He held positions as a Cost Estimator for Industrial Engineering and as an Accounting Clerk before his promotion to Cost Accountant in 1993.  Doc. 46-7 ¶¶ 9, 16; Doc. 36-2 at 1.

During his employment, plaintiff has filed at least seven Equal Employment Opportunity Commission ("EEOC") charges against ACIPCO and at least three lawsuits, the last of which he filed on August 9, 1991.  Doc. 46-7 ¶¶ 8, 9, 11-15, 18; Doc 36-2 at 2.  Although some of these suits resulted in favorable relief for plaintiff, (*see* Doc. 46-7 ¶¶ 9, 16), the late Judge Sam Pointer found the claims in plaintiff's last suit to be "groundless, frivolous, unreasonable, and without foundation," and awarded attorney's fees to ACIPCO.  *See* Doc 36-2 at 8. Subsequently, ACIPCO regularly deducted a portion of plaintiff's paycheck to satisfy the award of attorney's fees.  Doc. 36-1 at 8 (Dep. p. 26).  At plaintiff's

request, ACIPCO's President and CEO, Van Richey ("Richey"), stopped making the deductions in 1995 as they were a financial hardship for plaintiff and his family. *Id*. at 10 (Dep. p. 34).

In November 1998, Zeke Ward ("Ward") and Royce Handley ("Handley"), the then-current Manager and Assistant Manager for Cost Accounting, respectively, conducted a performance evaluation with plaintiff. The meeting grew contentious and, afterwards, plaintiff wrote Richey a note explaining that he felt Ward and Handley reviewed him without notice, gave him an unfair evaluation, and threatened him when Handley raised his voice and began flicking his pocketknife. Doc. 36-2 at 17-21. Richey forwarded the note to Leann Barr ("Barr"), Human Resources Director, for investigation, which she undertook with two other ACIPCO employees. *Id*. They concluded that Ward and Handley failed to follow certain performance evaluation steps and that they needed to develop an action plan to improve plaintiff's performance in certain respects. *Id*. at 20-21. The investigators further determined that Handley used his pocketknife to clip his cuticles, which was unprofessional, but not intended as a threatening gesture. *Id*. at 20. When Barr approached plaintiff about the investigation results, he informed her that he "wasn't aware that Mr. Richey was going to send that [letter] to her because it wasn't my intention. My intention was to resolve the issue and go forth

and try to work with these guys."  Doc. 36-4 at 7 (Dep. p. 27); *see also* Doc. 36-2 at 15.

## B.    *Procedure for Filling Non-Bid Salary Positions*

ACIPCO uses eight different selection systems to fill job openings, depending on the type of vacancy.  Doc. 36-4 at 47-49.  The non-bid salary selection system is used for jobs at the assistant department head level and above. *Id*. at 49.  Seniority is not a factor considered in filling non-bid salary jobs.  Doc. 36-7 at 31 (Dep. p. 119).  When filling these jobs, the division or department manager develops the candidate pool by identifying employees in their division with the prerequisite qualifications.  Doc. 36-4 at 49.  The manager then sends a copy of the job description to all division managers and the Equal Employment Opportunity ("EEO") Officer, requesting recommendations of employees in other divisions that meet the job qualifications.  *Id*.

Next, the manager analyzes each candidate's qualifications.  *Id*.  To do so, the managers can conduct interviews and may use a targeted selection interview process, which was developed by Design Dimensions International and instituted at ACIPCO around 1995.  *Id*. at 48; Doc. 36-7 at 12 (Dep. p. 42); Doc. 36-12 at 1. In a targeted interview, trained interviewers follow a written interview guide to ask a series of questions on predetermined "dimensions," which are defined as

"behaviors associated with success or failure on a job." Doc. 36-4 at 48; Doc. 36-1 at 5 (Dep. p. 13). The candidate is expected to respond by identifying a situation, task, action, and result, or "STAR." Doc. 36-1 at 5 (Dep. p. 13). The candidates are then scored based on their responses. Doc. 36-12 at 21.

Finally, the Selection Committee meets to evaluate the candidates and make the final decision. The Selection Committee is composed of Richey (Caucasian); Barr (Caucasian); Randolph Fowler ("Fowler"), EEO Officer (African-American); and the relevant Division Manager, who, in this case, was John Cook, Vice President of Finance and Treasurer (Caucasian). Doc. 36-4 at 49; Doc. 36-22 at 6.

## C.   *Assistant Manager for Cost Accounting Promotion in 2008*

In February 2008, ACIPCO promoted Handley from Assistant Manager to Manager of Cost Accounting, creating a vacancy for the Assistant Manager position. Doc. 36-2 at 45. To fill the position, Handley first created a pool of eleven candidates, including plaintiff. Doc. 36-3 at 14. The job description required each candidate to have an accounting degree from an accredited four-year college or university, as well as other skill sets. *Id*. at 7. The description also listed a post-graduate degree in business or accounting as a preferred qualification. *Id*. at 8. Handley sent the candidates an email on February 28, 2008, asking them to respond by March 14, 2008, if they wished to be considered for the position.

Doc. 36-3 at 5.  Plaintiff and three other candidates responded in the affirmative:

Jeff Carr ("Carr") (Caucasian/DOB 1971), Lori Turner (Caucasian/DOB 1971),

and George MacBride (African-American/DOB 1965).  Doc. 36-3 at 14; Doc. 36-

22 at 3-4.  Plaintiff has two Bachelor of Science degrees, one in Business

Management and one in Accounting.  Doc. 36-23 at 1.  He also has a Masters in

Business Administration.  *Id*.  Carr, the successful candidate, only has one degree

– a Bachelor of Science in Accounting.  Doc. 36-22 at 13.

Handley and Larry Mann ("Mann"), Assistant Treasurer and Controller,

conducted targeted selection interviews of the four candidates between March 26

and March 28, 2008, using an interview guide prepared by Human Resources.

Doc. 36-3 at 14; Doc. 36-14 at 19 (Dep. p. 72).  Handley and Mann received

training on targeted selection interviews in 1998 or 1999.  Doc. 36-5 at 21 (Dep. p.

78) ; Doc. 36-14 at 10 (Dep. p. 34).  The sixteen dimensions addressed were:

Education, Work Background, Analysis/Problem Assessment, Initiative,

Technical/Professional Knowledge, Adaptability, Follow-up, Judgment/Problem

Solving, Communication, Information Monitoring, Planning and Organizing/Work

Management, Maximizing Performance, Coaching, Developing Organizational

Talent, Individual Leadership/Influencing, and Motivational Fit.  Doc. 36-3 at 15.

The interviews rated the responses for each dimension as follows: (1) much less

than acceptable, (2) less than acceptable, (3) acceptable, (4) more than acceptable, or (5) much more than acceptable.  Doc. 36-11 at 26-28, 45.  For each candidate and dimension, the interviewers read the definition of the dimension and then asked the same questions for that dimension.  36-6 at 9 (Dep. pp. 215-16).[5] Handley and Mann took notes on the candidates' responses in the interview guides.  Doc. 36-11 at 1-68; Doc. 36-12 at 1-23.  Plaintiff's interview lasted approximately sixty to ninety minutes.  Doc. 36-1 at 26 (Dep. p. 98).  Plaintiff contends that the interviewers were inattentive and took fewer notes than in his previous targeted selection interviews.  Doc. 36-4 at 29 (Dep. p. 113).

Handley and Mann did not score each dimension during the interview in the bottom right-hand corner box provided for that purpose.  *See* Doc. 36-11; Doc. 36-12.  They discussed individual candidates after each interview and, in early April, completed the final "data integration" and prepared the following summary:

---

[5]Plaintiff disputes Handley's testimony that the interviewers read the definition of the dimension before asking questions related to that dimension.  Doc. 43-1 at 5.  Plaintiff's evidentiary citations, however, do not support his contention.

|  | Educ. | Work Back-ground | Comm. | Analysis / Prob Assess | Initiative | Technical / Prof Knowledge | Adapt-ability | Follow-up |
|---|---|---|---|---|---|---|---|---|
| MacBride | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 3 |
| Porter | 3 | 2 | 3 | 2 | 2 | 2 | 2 | 3 |
| Turner | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Carr | 3 | 3 | 3 | 3 | 4 | 3 | 4 | 3 |

|  | Judgt / Prob Solving | Info Moni-toring | Plan & Org Work Mgt | Max Perf | Coach | Develop Org Talent | Indiv Lead Influencing | Motiva-tional Fit | Total |
|---|---|---|---|---|---|---|---|---|---|
| MacBride | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 |
| Porter | 2 | 3 | 2 | 2 | 2 | 2 | 3 | 2 | 2 |
| Turner | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Carr | 3 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 |

Doc. 36-15 at 1; Doc. 36-14 at 13, 20 (Dep. p. 45-47, 73-75).

Mann and Handley then provided the Selection Committee with summaries of each candidate's qualifications and interview performance and recommended Carr "based on his strengths in communication, adaptability, maximizing performance, coaching, leadership, and motivational fit."[6]  Doc. 36-3 at 14-22. Human Resources prepared a summary of each candidate's education and work experience.  Doc. 36-22 at 2-3, 5-38; Doc. 36-23 at 1-38.  The Selection Committee met, reviewed the materials, and adopted Mann and Handley's

---

[6]The interviewers also attached plaintiff's resume to his summary.  Doc. 36-3 at 16-19.

recommendation on May 1, 2008.  Doc. 36-22 at 6-8.

After learning that he was not the successful candidate, plaintiff approached Fowler and informed him that he felt that the interview process was unfair.  Doc. 36-18 at 22 (Dep. p. 83-84).  Fowler investigated and concluded that discriminatory animus played no role in plaintiff's non-selection.  *Id*. at 22-25 (Dep. p. 84-95).  Plaintiff filed an EEOC charge on May 27, 2008, alleging race and age discrimination and retaliation.  Doc. 9-1.

## V.  ANALYSIS

Plaintiff asserts claims of race discrimination and retaliation pursuant to Title VII and Section 1981,[7] and age discrimination in violation of the ADEA.[8] Additionally, he argues race discrimination claims based on both disparate

---

[7]Because claims under section 1981"require the same elements of proof as a Title VII action," the court applies the same analysis to plaintiff's Title VII and section 1981 claims for race discrimination and retaliation.  *Palmer v. Dist. Bd. of Trs. of St. Petersburg Junior Coll.*, 748 F.2d 595, 596 n.2 (11th Cir. 1984).

[8]Plaintiff's complaint states that defendants "discriminated and retaliated against Plaintiff with respect to job duties, assignments, job evaluations, pay, promotion, hostile work environment, and other terms and conditions of employment . . . ."  Doc. 1 ¶ 26.  However, plaintiff's complaint focuses specifically on the Assistant Manager promotion and, although defendants moved for summary judgment on all plaintiff's claims, the parties confined their briefing to that issue.  Additionally, with respect to plaintiff's Title VII claims, plaintiff's EEOC charge only addressed the promotion.  Doc. 9-1.  To the extent that plaintiff sought to bring claims based on adverse employment actions other than the promotion, the court deems those claims waived.  *See, e.g.*, *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir. 2003) (issue not briefed in response to summary judgment motion deemed abandoned).

13

treatment and disparate impact theories.

Because plaintiff is relying on circumstantial evidence for his disparate treatment claim, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for his race discrimination (disparate treatment), retaliation, and age discrimination claims. Under that framework, plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If plaintiff satisfies his initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

**A.     Race Discrimination:  Disparate Treatment**

   *1.     Plaintiff establishes a prima facie case.*

To make out a *prima facie* case on a failure-to-promote case, plaintiff must

14

establish the following elements: (1) membership in a protected class,

(2) qualification and application for the position, (3) rejection, and (4) selection of

an individual outside of his protected class.  *Id*. at 1347-48 n.2.

Defendants argue that plaintiff must also establish that "other equally or less

qualified employees who are not members of the protected minority were

promoted."  Doc. 35 at 12 (citing *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th

Cir. 2000)).  Although this court acknowledges that some Eleventh Circuit cases

use this formulation, many recent cases do not require plaintiff to establish equal

or superior qualifications, and this court declines to employ that additional hurdle

here.  *See Bernstein v. Sephora,* 182 F. Supp. 2d 1214, 1220-21 (S.D. Fla. 2002)

(examining the intra-circuit split and concluding that the plaintiff was not required

to prove that she was "equally or more qualified" as part of her *prima facie* case);

*see also Keaton v. Cobb County, Ga.*, 2009 WL 212097, at *3 n.4 (11th Cir. Jan.

30, 2009) (citing *Springer*, 509 F.3d at 1347-48 n.2).  Thus, because defendants

concede that plaintiff meets the first three prongs of the test, (doc. 35 at 12), and

there is no dispute that Carr, who is white, is outside of plaintiff's protected class,

the court finds that plaintiff establishes his *prima facie* case.  Indeed, even under

defendants' formulation, there is enough evidence here for some to find that

plaintiff is, at a minimum, as equally qualified as Carr.  Therefore, summary

15

judgment would be improper on the basis that plaintiff is purportedly unable to establish a *prima facie* case.

As a legitimate, non-discriminatory reason for promoting Carr, defendants state that he was more qualified based on his interview performance.  Doc. 35 at 15.  Plaintiff counters that defendants' articulated reason is pretext for discriminatory and retaliatory conduct.

### 2. *Plaintiff presents insufficient evidence to establish a material issue of fact on pretext.*

To establish that defendants' stated reason is a pretext for unlawful discrimination, the plaintiff "must meet the reason proffered head on and rebut it . . . .  If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citations omitted).  As the Eleventh Circuit has often emphasized:

> [F]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal law] does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citing

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)); *see also*

*Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) ("We do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." (citation omitted)).  The court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (citations and internal quotation marks omitted).

Plaintiff alleges that the following establish pretext: (1) his superior qualifications, particularly his three degrees and his seniority, and the suppression of evidence of his accomplishments, including his training at Eagan College (ACIPCO's in-house training), at the Selection Committee meeting; (2) the subjectivity of the interview; (3) ACIPCO's history of discriminating against him based on race; (4) the lack or infrequency of his performance evaluations since 1998; and (5) Carr's grooming for the position prior to the interviews.  Plaintiff's arguments fail because they do not address defendants' articulated reason for promoting Carr.  In addition, several of plaintiff's contentions lack evidentiary support.

17

*a.     Superior Qualifications*

At the heart of plaintiff's argument is his belief that he should have received the promotion because he had more seniority – thirty-four years to Carr's ten – and two Bachelor of Science degrees and an M.B.A. (which was a preferred qualification) to Carr's single Bachelor of Science degree.  Doc. 36-22 at 16; Doc. 36-23 at 1-2.  Frankly, the undersigned understands plaintiff's expectation that he would receive the promotion because of his superior academic accomplishments. However, as a judge, the undersigned is bound by the Eleventh Circuit's standards – all of which dictate a finding against plaintiff.

First, courts have rejected plaintiff's seniority argument and have held repeatedly that seniority is not synonymous with best qualified.  "Time on the job does not always translate into a net performance improvement" and is irrelevant when the employer does not promote based on seniority.  *Ferron v. West*, 10 F. Supp. 2d 1363, 1367 (S.D. Ga. 1998); *see also Turner v. City of Auburn*, 2010 WL 105712, at *2 (11th Cir. Jan. 13, 2010) (per curiam) ("That Plaintiff believed in the superiority of his qualifications – that his seniority and experience should trump his poor performance on the exam – is not determinative; in reviewing a Title VII plaintiff's qualifications, we focus on the employer's requirements and do not second-guess the employer's business judgment."); *Thomas v. Bed Bath &*

*Beyond, Inc.*, 508 F. Supp. 2d 1264, 1281 (N.D. Ga. 2007) (plaintiff's seniority

irrelevant when it was not a criterion for promotion).  Although he believes that

seniority should factor into the promotion decision, the evidence presented clearly

establishes that ACIPCO does not, and has not previously, considered seniority in

this type of managerial-level promotion.  *See* Doc. 36-4 at 47-48 (May 2001

newsletter explaining ACIPCO's eight selection systems; seniority is listed for

some systems, but not the non-bid salaried jobs); Doc. 36-7 at 31 (Dep. p. 119)

(Barr testified that ACIPCO has never considered seniority for managerial

promotions).[9]

Plaintiff contends that "negating the consideration of seniority . . . is just

another tool to allow the advancement of younger, less experienced White Males

ahead of older, more tenured Black Males" and that "there is no legitimate

business purpose for the practice."  Doc. 43-1 at 4.  First, there is no evidentiary

support for plaintiff's contention.  Second, the court can appreciate why an

employer would choose not to adopt a promotion system for managerial

employees based solely on or motivated heavily by seniority because, after all,

---

[9]Plaintiff also argues that he trained Carr on "rolling costs" and that Carr "possessed only limited accounting experience prior to his coming to work for ACIPCO." Doc. 43-1 at 13-14. Both of these points essentially repeat plaintiff's seniority argument.  Even assuming plaintiff did teach Carr to roll costs when he started working at ACIPCO, which Carr denies, (doc. 36-21 at 4, (dep. p. 9)), that does not establish that Carr failed to gain the experience necessary to make him a qualified candidate for promotion during his ten years with ACIPCO.

19

length of service does not always translate to best qualified.  *See Ferron*, 10 F.

Supp. 2d at 1367.  Finally and significantly, even if this court agreed with plaintiff

that ACIPCO should consider seniority in management promotions, this court

does not have the power to impose its business opinions on ACIPCO.  As the case

law makes clear, even if plaintiff is correct that ACIPCO's practices are out-dated,

"[N]o matter how medieval a firm's practices, . . . no matter how mistaken the

firm's managers, [federal law] does not interfere."  *Chapman*, 229 F.3d at 1030.

Next, with respect to education, plaintiff clearly has an accomplished

academic record and more degrees than Carr.  Specifically, plaintiff has an

M.B.A., which was a preferred qualification, and Carr does not.  If education was

the sole or the determinative factor in the promotion decision, this court would

find that plaintiff has presented sufficient evidence to establish pretext.

However, because an M.B.A. was a preferred qualification rather than a

minimum requirement, this court is bound by the Eleventh Circuit's decision in

*Springer*.  509 F.3d 1344.  In that case, the employer promoted an employee who

had the requisite years of experience but, unlike the plaintiff, did not have a four-

year degree.  *Id*. at 1349.  The court stated: "Given the undisputed evidence with

respect to [the successful candidate's] qualifications for the position, Plaintiff's

possession of a four-year degree thus is insufficient by itself to conclude that [the

defendant's] proffered reasons for promoting [the other candidate] is pretext." *Id*.

Additionally, even if this court concludes that plaintiff should have received more than three points in the education dimension (and he should have),[10] that dimension was only one of sixteen.  Plaintiff's opposition brief does not address the twelve other dimensions in which Carr scored higher than him.  These dimensions addressed factors other than academic background and, accordingly, plaintiff fails to present evidence that meets his burden of establishing that defendants' articulated reasons are pretextual.  In sum, while plaintiff undoubtedly has more degrees than Carr, plaintiff's evidence "does not demonstrate that he was so much more qualified than [Carr] that a reasonable jury, on this record, could infer discrimination from the mere fact of his non-selection."  *Denney*, 247 F.3d at 1188.

Further, plaintiff asserts that "[t]he selection committee . . . did not have any materials on which to evaluate or compare the qualifications of [plaintiff] . . . fairly or equitably.  The only document the selection committee reviewed in considering [plaintiff] for the assistant manager position was the negative and biased summary compiled by [Mann and Handley] which rated him artificially low

---

[10]In light of plaintiff's superior academic accomplishments, the court is confounded by the interviewers' decision to award plaintiff the same points as Carr on education.

and very negatively." Doc. 43-1 at 14. The evidence belies this statement. Specifically, the file that the Selection Committee reviewed contained, among other things: (1) interview summaries prepared by Handley and Mann; (2) the candidates' biographical sketches prepared by Human Resources with their date of hire, professional associations, previous work history, ACIPCO work history, education, and training completed prior to 1999; (3) Eagan College transcripts from January 1, 1999 to March 26, 2008; (4) plaintiff's resume. Doc. 36-22; Doc. 36-23. In other words, contrary to plaintiff's unfounded assertion, the Selection Committee had his work, education, and training history in front of it when it made the selection decision.

  *b.*  *Subjectivity of the Interview*

  Plaintiff argues that the interview was subjective because (1) the interviewers knew him, and (2) the interviewers drafted summaries of the candidate's responses, expressing their opinion on the strength of the candidates' answers. Doc. 43-1 at 5-6, 14; Doc. 46-7 ¶ 11 ("ACIPCO relied on the subjective judgment of Caucasian supervisors who were acquainted with the candidates and the nature of the job."). Plaintiff implicitly suggests that ACIPCO should have used interviewers from different departments or from another company to eliminate the presumed bias interviewers form naturally from working for years

with candidates.  Unfortunately for plaintiff, he is asking for far more than the law allows.

First, the law does not prohibit employers from utilizing subjective criteria for employment decisions:

> We begin with an important threshold point: A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas / Burdine* analysis.  Indeed subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy. . . .   Interviews give prospective employers a chance to see if an applicant has the kind of personal qualities a service job requires and can be the best way an employer has to determine how a person interacts with others.

*Chapman*, 229 F.3d at 1033 (further noting that "[p]ersonal qualities also factor heavily into employment decisions concerning supervisory or professional positions").  Plaintiff thus misses the mark when he claims that defendants' selection procedures are discriminatory because they utilize "the subjective judgment of Caucasian supervisors who were acquainted with the candidates and the nature of the job."  Doc. 46-7 ¶ 11; *see also* Doc. 43-1 at 5.

Second, plaintiff cites to no authority holding that interviews conducted by persons known to the interviewees are inappropriate or pretext for discrimination. In this case, the interviewers both worked in the Finance Division and would have responsibility for supervising the successful Assistant Manager candidate.

23

Moreover, as the previous Assistant Manager, Handley was uniquely placed to

assess which candidate was most likely to succeed in that position.  It is totally

impractical to ask an employer to select candidates blindly by using interviewers

who have no familiarity with any of the candidates.  Part of any supervisory

selection is the determination of whether a candidate has the necessary skill set to

perform effectively in the position.  *See Chapman*, 229 F.3d at 1033.  The persons

best situated to make this determination inevitably are those who have worked

with the applicants and, thus, are in a position to comment on the candidates.

While a candidate who has negative history with an interviewer would rightly

prefer that the individual have no involvement in the process – especially when,

perhaps, the same individual has a positive history with one of the other

candidates –  this court's role is not to dictate to employers how they should select

their interviewers.  Rather it is limited to looking at the process to see if it

contained any discriminatory animus.  That the interviewers knew plaintiff or the

other candidates is an insufficient basis, by itself, to establish pretext.

Third, defendants used the same interview procedure for all four candidates,

which makes it difficult for plaintiff to contend that defendants treated him

differently because of his race.  *See Gary v. Hale*, 212 Fed. Appx. 952, 959 (11th

Cir. 2007) (per curiam) (upholding promotion protocol, in part, because the

24

defendant "presented evidence that the promotion protocol was the same for all candidates, and provided the measurable factors by which all candidates were scored").

Finally, the court notes that ACIPCO has actually attempted to make its selection process more objective by using a system that includes a structured interview process.  In structured interviews, "each candidate is asked the same questions, with limited follow up questions. They are designed to promote a non-discriminatory search by providing each candidate an equal opportunity to show how his or her skills fit the requirements for the vacant position." *Drakeford v. Ala. Co-op. Extension Sys.*, 416 F. Supp. 2d 1286, 1295 n.6 (M.D. Ala. 2006); *see also Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 218 (1st Cir. 2008) ("The interview process consisted of . . . a 'structured interview,' wherein all candidates would be asked the same questions by interviewers.  The process is designed to be objective, as there are specific subjects to be covered and responses deemed acceptable.").  Contrary to plaintiff's contention, ACIPCO utilizes a process that is actually designed to be objective.  Handley and Mann asked each applicant, including plaintiff, the same questions in the same order and scored each based on how well they addressed the "STAR" answer format.  That the process involves a human component, *i.e.*, the scoring, does not make it

automatically discriminatory.  *See, e.g.*, *Gary*, 212 Fed. Appx. at 959 (upholding a

promotion decision in which "[t]he criteria by which the candidates were assessed

were innocuous, and, despite some subjective components (a supervisor's

evaluation, the Committee interview), they were generally quantifiable").

Plaintiff does, however, point to one potential flaw in the procedure

followed by Handley and Mann in conducting the targeted selection interview.  In

the interview guide, the bottom right corner of each page pertaining to a particular

dimension (other than education or work background) contains a box where the

interviewer can enter a numerical ranking.  *See* Doc. 36-11 at 6-18.  The

interviewers did not fill in those boxes in either plaintiff's or Carr's interview

guides.[11]  *See id.* at 6-18, 29-41, 51-63; Doc. 36-12 at 6-18.  The post-interview

instructions state that interviewers should review their notes, rate the applicants on

the five-point scale, and write the rating in the box provided.  Doc. 36-12 at 22.

The instructions, however, do not specify exactly when that scoring should occur.

*Id*.  Mann testified that the interviewers discussed each interview immediately

afterwards but did not determine the numerical rankings for each dimension at that

time.  Doc. 36-14 at 13 (Dep. pp. 45-47).  In early April, shortly after they

---

[11]The interview guides for the other two candidates are not part of the record.  However, no evidence in the record suggests that Handley and Mann followed a different process for those candidates.

completed all four interviews, Handley and Mann met to create the summaries for the individual candidates and the chart comparing their rankings on the individual dimensions. *Id.* at 19-20 (Dep. p. 72-75).  Plaintiff argues that Handley and Mann should have rated each candidate individually in each dimension during or immediately after the individual interviews, and that this failure is evidence of pretext.  Doc. 43-1 at 4-5.

The Eleventh Circuit rejected similar challenges to interview procedures in *Conner v. Lafarge N. Am., Inc.*, 343 Fed. Appx. 537 (11th Cir. 2009) (per curiam).  In that case, a panel of interviewers met with the candidates and asked each hypothetical questions based on eight interview topics.  *Id.* at 539, 542.  Subsequently, the human resources manager sent one of the interviewers a scoring matrix recently designed for a different vacancy.  *Id.* at 539.  The interviewer then reweighted the scoring matrix factors to fit the position at issue.  *Id.*  Two months after the initial interviews, the panel met, assessed the candidates according to the new matrix scorecard, and ranked the candidates in ten categories.  *Id.*  The plaintiff argued that the procedures were sufficient to establish pretext because one interviewer reweighted the matrix after participating in the interviews, and the interview panel correlated eight topics with ten unexplained categories on the matrix scorecard.  *Id.* at 542.  The court disagreed, explaining: "While these facts

might demonstrate that [defendant's] selection process was unwise, they are not evidence that it served as a pretext for discrimination." *Id*. at 543 (further noting that the defendant "supported its subjective interview scoring system with specific factual bases").

Although, perhaps, Mann and Handley should have assigned numerical scores to each dimension immediately following each interview in the boxes provided on the guide, this fact alone does not establish that their failure to do so is a pretext for discrimination. Specifically, a review of the interview guides demonstrate that Mann and Handley took similar notes on the candidates' responses, suggesting that they accurately captured the candidates' responses. *See* Doc. 36-11; Doc. 36-12; Doc. 46-2; and Doc. 46-3. Additionally, as in *Lafarge*, they supported their ratings with specific factual bases in the interview summaries. For example, they noted that plaintiff's work background was less than acceptable because his answer demonstrated a lack of general knowledge of all product lines. Doc. 46-2 at 1. Similarly, the interviewers rated his coaching as less than acceptable because, in response to a question asking him to describe a situation in which one of his team members became more successful as a result of his coaching, he responded that he assisted a fellow employee with learning to

28

navigate in a Microsoft Word application by using the mouse and right-clicking.[12]

*Id*. at 3.  Thus, in this case, the alleged deviation in the structured interview

process does not establish a material issue of disputed fact on pretext since the

interviewers based their ratings of all the candidates' responses on specific factual

grounds.

    c.    *History of Racial Discrimination*

    Plaintiff further asserts that "his past racially discriminatory treatment as an

individual and as a class member has been pervasive and consistent."  Doc. 43-1 at

12.  ACIPCO clearly subjected plaintiff to racially discriminatory practices during

his employment at ACIPCO and plaintiff rightly sought the assistance of the

---

[12]Plaintiff takes issue with the interviewers' summary of his answers.  Doc. 46-7 ¶¶ 41, 44-47.  Specifically, plaintiff contends they left out critical points he made to justify the rating they gave him.  *Id.*  The court assumes for the purpose of summary judgment that plaintiff is correct.  However, this still does not get him past summary judgment for several reasons.  First, the Eleventh Circuit "has never held that an interviewer must take substantially verbatim notes of an interview, or even notes at all, to be entitled to proffer legitimate, non-discriminatory reasons gleaned from an interview . . . .  Such close judicial oversight of a business and its hiring practices would be unprecedented and unwarranted."  *Chapman*, 229 F.3d at 1035 n.26.

Second, a separate selection committee made the final decision.  Although they had the allegedly biased interview notes, they also had plaintiff's full education, work, and training background (as well as his self-drafted resume) in front of them.  Doc. 36-22; Doc. 36-23.  Significantly, plaintiff failed to present any evidence that establishes that the Selection Committee acted unreasonably or lacked an honest basis for including the interview summaries in their decision process.  *Cf. Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("For purposes of Title VII analysis, it is thus of no consequence that [plaintiff] now disputes the charges.  The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts . . . [his challenge] by showing that it honestly believed the employee committed the violation.").  On this record, the court cannot find that the Selection Committee erred or engaged in discrimination when it considered the interviewers' summaries.

EEOC and the courts in remedying those evils.  However, prior to May 2008, plaintiff's last EEOC charge or lawsuit was filed on August 9, 1991.  Doc. 46-7 ¶¶ 8, 9, 11-15, 18; Doc 36-2 at 2.  In plaintiff's last case, however, the court awarded attorney's fees to ACIPCO.  *See* Doc. 36-2 at 8.  Nevertheless, in 1993, even after that judgment, ACIPCO promoted plaintiff to Cost Accountant.  Doc. 36-2 at 1.  While plaintiff may believe that the past discrimination continues to manifest itself presently, the law precludes him from relying on events occurring fifteen years (or more) prior to the promotion as evidence to support his current claim, particularly as ACIPCO promoted him *after* he filed his last lawsuit.

      *d.*   *Evaluations*

     Plaintiff further seeks to establish pretext based on the fact that he has not received annual performance evaluations.  This argument fails for at least two reasons.  First, plaintiff presents no evidence that other employees in his position regularly received performance evaluations.  In fact, Carr testified that, prior to the promotion, it has "been a while . . . [a] couple of years" since his last performance review.  Doc. 36-21 at 20 (Dep. p. 76).  Second, performance evaluations played no role in the promotion decision and were not presented to the Selection Committee.  *See* Doc. 36-22; Doc. 36-23.

e.    *Grooming of Carr Prior to Interviews*

Finally, while plaintiff apparently believes that Carr's promotion was pre-ordained, the evidence he cites is insufficient to establish a material issue of disputed fact.  Specifically, plaintiff testified that defendants groomed Carr for the position on weekends because Carr and another employee "made snowmans [sic] on the picnic tables outside ACIPCO" one weekend.  Doc. 36-1 at 14 (Dep. p. 51); *see also* Doc. 46-7 ¶ 4 (further alleging that Carr received special training on the weekends and reaffirming the snowman incident).  That an employee was at work on a weekend does not mean he was receiving special training.  However, even if plaintiff's evidence was sufficient to establish a material issue of fact on whether Carr secretly received extra training, it does not address the critical issue: plaintiff received the lowest scores of all four candidates and the interviewers found that Carr had the strongest skills in communication, adaptability, maximizing performance, coaching, leadership, and motivational fit.  Even if plaintiff is contending that the extra training helped Carr to score higher, it does not help him to establish pretext.  In fact, such an argument would undermine plaintiff's claim since he would essentially be conceding that Carr scored higher and, as such, acknowledge defendants' articulated reason for selecting Carr.  Moreover, while it is fundamentally unfair for supervisors to pre-train a candidate to give him a leg

31

up in a selection process, Title VII does not prohibit unfair conduct. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII addresses *discrimination*. . . .   Title VII is not a shield against harsh treatment at the workplace." (internal citations and quotation marks omitted) (emphasis in original)).  Because plaintiff failed to establish that discriminatory intent motivated the decision to select Carr instead of plaintiff for extra training, no pretext is established. *Id*

In sum, plaintiff "cannot succeed by simply quarreling with the wisdom" of defendants' reasons for promoting Carr over him. *Chapman*, 229 F.3d at 1030.  It is not this court's position to determine whether defendants selected the best or most educated candidate.[13]  Rather, the court's role is limited to ascertaining whether racial animus improperly motivated the selection decision and whether defendants provided an honest explanation for their selection:  "We do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney*, 247 F.3d at 1188 (citation omitted).   Plaintiff fails to present sufficient evidence to establish a material issue of fact on this issue.  Accordingly, defendants are entitled to summary judgment on his race discrimination claim.

---

[13]As the court stated before, plaintiff is by far the most educated candidate.

### B.     Race Discrimination:  Disparate Impact

Plaintiff also raises a disparate impact argument in his response to defendants' motion, contending that ACIPCO's targeted selection interviews unfairly discriminate against African-American applicants.[14]  Doc. 43-1 at 19-21. Defendants, however, respond that plaintiff did not plead a disparate impact claim and that this court previously recognized that fact by limiting discovery to matters relevant to plaintiff's disparate treatment claim.  Doc. 51 at 9-10 (citing the Scheduling Order entered on July 28, 2009, Doc. 8).[15]  The court has reviewed plaintiff's complaint and agrees with defendants that plaintiff failed to plead a disparate impact claim.  Therefore, the court properly denied discovery on a disparate impact theory, (*see* doc. 8; doc. 32), and plaintiff's attempt to resurrect the claim at this late date – after the close of discovery and the deadline for dispositive motions – is unsuccessful.

Moreover, to establish disparate impact, plaintiff must do more than just

---

[14]Plaintiff's response is entitled "Plaintiff's Response to Defendant's Memorandum in Support of Its Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment."  Doc. 43-1 at 1.  It is unclear on what claim plaintiff seeks to move for summary judgment.  However, given that defendants did not address plaintiff's disparate impact claim in their motion for summary judgment, the court assumes that plaintiff requests partial summary judgment on that claim.  The court denies plaintiff's motion.

[15]This case was originally assigned to Judge Inge Prytz Johnson and was randomly reassigned to the undersigned on January 7, 2010.

make the allegation.  Instead, he "establishes a prima facie disparate-impact claim by showing that the employer '*uses* a particular employment practice that causes a disparate impact' on one of the prohibited bases."  *Lewis v. City of Chicago, Ill.*, --- S. Ct. ---, 2010 WL 2025206, at *5 (U.S. May 24, 2010) (quoting 42 U.S.C. § 2000e-2(k)) (citing *Ricci v. DeStefano*, 557 U.S. ---, ---, 129 S. Ct. 2658, 2672-73 (2009)) (emphasis in original).  Specifically, plaintiff must show "(1) a specific, facially-neutral employment practice, (2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those qualified to benefit from the practice, and (3) a causal nexus between the practice identified and the statistical disparity."  *Price v. M & H Valve Co.*, 177 Fed. Appx. 1, 14 (11th Cir. 2006) (per curiam).  Plaintiff failed to make this showing.[16]  For example, at a minimum, plaintiff should have presented evidence of the selection rates of African-Americans compared to non-African-Americans and made the requisite showing of an adverse impact.  Furthermore, through statistics, plaintiff should have shown the existence of a "significant disparity between the black population in the defendant's [managerial] workforce, or any relevant portion thereof, and the black population of the labor pool from which that work force, or

---

[16]Plaintiff contends that defendants failed to answer relevant discovery, presumably on this issue, and that this court should therefore deny defendants' motion for summary judgment. However, as defendants point out, the court denied plaintiff's motion to compel. Doc. 32.

relevant portion thereof, comes." *EEOC v. E.I. duPont De Nemours & Co.*, 445 F. Supp. 223, 232 (D. Del. 1978) (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977)).

The Eleventh Circuit addressed a similar issue in *Pace v. Southern Railroad System*, 701 F.2d 1383, 1388-89 (11th Cir. 1983).  In *Pace,* plaintiff argued that defendant engaged in age discrimination because ten of the twelve persons demoted were in the protected group.  *Pace*, 701 F.2d at 1399.  The Eleventh Circuit rejected plaintiff's argument because plaintiff failed to present evidence on the employer's demographics, specifically the percentage of protected group individuals versus non-protected group individuals in the employer's workforce. *Id.*  The Eleventh Circuit found the omission critical because such evidence may establish that the demotions mirrored the employer's workforce.  *Id*.

Similarly, here, plaintiff has offered no comparative evidence and has not presented any statistical evidence to establish a prima facie case.  Instead, all the court knows is that defendants considered four candidates, two of whom were African-American, and selected a white male.  Under these facts, the court can draw no inference from the decision to select a white male.  Moreover, this sample size of four is simply too small for the court to conclude, as plaintiff contends, that ACIPCO's targeted selection interviews unfairly discriminate against African-

Americans.  *See, e.g., Mayor of Phila. v. Educ. Equal. League*, 415 U.S. 605, 620-21 (1974) (statistics regarding racial composition of thirteen member school board nominating panel were meaningless); *Pitre v. W. Elec. Co., Inc.*, 843 F.2d 1262, 1268 (10th Cir. 1988) (Sample sizes ranging from two to twenty-four people were too small to produce meaningful use of statistics); *Haskell v. Kamen Corp.*, 743 F.2d 113, 121 (2d Cir. 1984) (ten terminations over eleven-year period are too small to permit inference of discrimination).

## C.    Retaliation

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted); *see also Sicilia v. United Parcel Serv., Inc.*, 279 Fed. Appx. 936, 939 (11th Cir. 2008) (per curiam) (to establish a causal connection, plaintiff must show that the decision makers were aware of the protected activity and that the adverse action and the activity were related).  Defendants argue that plaintiff cannot establish a *prima facie* case of retaliation and, even if he can, he cannot establish that defendants' reasons for his non-selection are pretextual.

    *1.    Plaintiff fails to establish a prima facie case of retaliation.*

Plaintiff filed a series of EEOC charges and lawsuits against ACIPCO, the last of which resulted in a judgment for ACIPCO in December 1992.  Doc. 46-7 ¶¶ 8, 9, 11-15, 18, 20.  Plaintiff also points to an internal complaint lodged after his 1998 performance evaluation.  Doc. 43-1 at 19.[17]  Defendants agree that the EEOC charges and lawsuits constitute protected activity.  Doc. 35 at 19.  Furthermore, they do not dispute that the decision makers knew of this protected activity.

Defendants contend, however, that plaintiff cannot establish a causal link between these activities and ACIPCO's decision to select Carr because plaintiff's last protected activity took place no later than 1998, ten years prior to the promotion decision.  Doc. 35 at 19-20.  The Eleventh Circuit "construe[s] the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith*, 513 F.3d at 1278 (quoting *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).  The Eleventh Circuit has rejected a "per se rule as to the length of time necessary to create" an inference of causation on

---

    [17]Drawing all inferences in plaintiff's favor, the court assumes that plaintiff lodged an internal complaint of racial discrimination even though plaintiff testified that he did not intend for his letter to Richey to turn into an investigation.  Doc. 36-4 at 7 (Dep. p.27); *see also* Doc. 36-2 at 15 (Barr's notes regarding the investigation state: "I asked Thomas if he felt there was anything else I needed to do.  He said no, he had not intended for this to turn into an investigation.  He just wanted a fair evaluation of his contribution and appropriate training.").

the basis of temporal proximity. *Kamensky v. Dean*, 148 Fed. Appx. 878, 881 (11th Cir. 2005) (per curiam) (but rejecting a one-year gap as insufficient to create an inference of causation).  However, "mere temporal proximity, without more, must be 'very close'." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (citation omitted) (concluding that a "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough").  And, even when very close, temporal proximity may still be insufficient.  *See McShane v. U.S. Attorney Gen.*, 144 Fed. Appx. 779 (11th Cir. 2005) (per curiam) (three-day gap between filing charge and termination insufficient evidence of pretext).

Plaintiff contends that since he filed "the first of his complaints, he has been subjected to retaliatory treatment based on his complaints on an almost daily basis. There have been numerous instances of retaliation, the denial of the position as Assistant Manager of Cost Accounting is just the latest in a string of retaliatory acts."  Doc. 43-1 at 18.  However, despite generally alleging "numerous instances of retaliation," plaintiff only cites specifically to (1) his previously filed lawsuits and EEOC charges against ACIPCO, the last of which was adjudicated in 1992, (2) the internal complaint related to the 1998 evaluation, (3) a comment by Mann in August 1991 that "You can't be promoted, because you sued the company,"

38

(doc. 46-7 ¶ 19), and (4) a comment by Mann in June 2007 that he "could get a trained monkey" to do plaintiff's job, (doc. 46-7 ¶ 6).[18]

Under Eleventh Circuit precedent, the incidents cited by plaintiff, only one of which occurred in the past ten years, are too isolated to demonstrate a pattern of retaliatory activity. *Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999) ("Appellant's transfer and termination occurred 15 and 21 months, respectively, after Appellant filed her grievance against her supervisor.  Far from demonstrating a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to Appellant's protected activity.").  Moreover, the fact that ACIPCO promoted plaintiff in 1993, (*see* doc. 36-2 at 1) – subsequent to his last lawsuit and Mann's comments in 1991 – further negates an inference that defendants did not promote him in 2008 in retaliation for protected activity that occurred almost twenty years ago.  *See Curtis v. Broward County*, 292 Fed.

---

[18]Plaintiff further alleges that since he brought this action, "he has been subjected to intimidation, harassment and a hostile work environment with the threat of bankruptcy by the defendants [sic] flagrant attempt to reinstate a previously settled debt.  Said debt having been settled by agreement between ACIPCO President Mr. Van Ritchey [sic] and the plaintiff Mr. Porter."  Doc. 43-1 at 19.  The "debt" referred to is the attorney's fees award from December 1992.  *See* Doc 36-2 at 8.  ACIPCO regularly deducted a portion of plaintiff's paycheck to satisfy the judgment.  Doc. 36-1 at 8-9.  At plaintiff's request, Richey stopped making the deductions in 1995.  Doc. 36-1 at 10 (Dep. p. 34).  Plaintiff cites to no evidence – nor does any such evidence appear in the record – that either defendant has sought recently to reinstate the collections.  Consequently, this court does not consider plaintiff's unsubstantiated statements evidence of retaliation.

Appx. 882, 885 (11th Cir. 2008) (per curiam) (nine-month gap between filing a complaint and an adverse action "severs any inference of causal connection"). Similarly, while Handley's behavior in 1998 and Mann's comment in 2007 are both inappropriate and rude, both lack a sufficient nexus to plaintiff's protected activity to establish a causal connection between the two. *See, e.g.*, *Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. 924, 926 (11th Cir. 2006) (per curiam) (noting in race discrimination case that "ambiguous stray remarks not uttered in the context of the decisions at issue" are insufficient circumstantial evidence to establish pretext).

Even if plaintiff's evidence is sufficient to establish a prima facie case of retaliation, his retaliation claim still fails because, for the reasons stated above, plaintiff fails to rebut defendants' legitimate, nondiscriminatory reasons for selecting Carr over him. *See* Section V.A.2.

**D.    Age**

*1.    Gross v. FBL Financial Services, Inc. does not bar plaintiff's ADEA claim.*

Defendants contend that plaintiff's age discrimination claim fails because pleading in the alternative is not permitted under the ADEA.  Doc. 35 at 21 (citing *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ---, 129 S. Ct. 2343 (2009)).  *Gross* held that "[t]o establish a disparate-treatment claim under the plain language of the

ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id*. at 2350 (citation omitted). Consequently, unlike Title VII cases, the ADEA does not permit mixed motive claims, in which an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations. *Id*. at 2351. Defendants argue that, after *Gross*, plaintiffs may not plead in the alternative. Doc. 35 at 21. The *Gross* Court, however, did not address that precise issue. And although the Eleventh Circuit has not yet addressed the question, other courts have continued to allow parties to articulate more than one theory of discrimination for the same adverse employment action. *See, e.g., Leibowitz v. Cornell Univ*., 584 F.3d 487 (2d Cir. 2009) (plaintiff presented evidence sufficient to survive summary judgment that her employer's non-renewal of her contract was based on her age or her gender); *Downs v. Regions Bank*, 2010 WL 381116 (M.D. Ala. Jan. 25, 2010) (alleging that age and gender discrimination motivated her termination). *But see Culver v. Birmingham Bd. of Educ*., 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009) (Acker, J.) (concluding that, after *Gross*, a plaintiff is no longer able to allege alternative or intersectional motives for an adverse employment action). Consequently, the court concludes that *Gross* does not bar plaintiff's ADEA claim.

41

2.     *Plaintiff's ADEA fails because he presents insufficient evidence to establish a material issue of fact on pretext.*

Post-*Gross*, the Eleventh Circuit has continued to apply the *McDonnell Douglas* burden-shifting analysis in ADEA cases when, as here, a plaintiff seeks to establish disparate treatment based on circumstantial evidence. *See Guimaraes v. Nors*, 2010 WL 529296, at *3 (11th Cir. Feb. 16, 2010) (per curiam). For the purpose of summary judgment, defendants concede that plaintiff can establish a *prima facie* case of age discrimination. Doc. 35 at 22 n.14. Plaintiff does not dispute that defendants have articulated a legitimate, non-discriminatory reason for plaintiff's non-selection, *i.e.* that Carr was more qualified because he performed better in the interview. Doc. 35 at 18, 23; Doc. 43-1 at 16-17. Consequently, the burden shifts back to plaintiff to establish that defendants' reason for promoting Carr is pretextual. Plaintiff fails to do so.

In his response, plaintiff seeks to establish pretext by arguing that defendants selected and groomed Carr for the promotion prior to the interview, that other individuals with equal or less education were promoted within the company, and that only he met the preferred qualifications for the position. The court has addressed and rejected these arguments above. *See* Section V.A.2. Furthermore, although not specifically addressed by plaintiff in his brief, he

42

testified in his deposition that some of his co-workers made comments or jokes that they thought he planned to retire.[19]  Such comments by non-decision makers are insufficient to establish evidence of age discrimination.  *Wallace v. O.C. Tanner Recognition, Co.*, 299 F.3d 96, 100 (1st Cir. 2002) ("brief, stray remarks unrelated to the termination decisional process" lacked probative value); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2001) ("[R]easonable inquiries into an employee's retirement plans do not permit an inference of discrimination . . . ." (citation omitted)); s*ee also Minton v. Am. Bankers Ins. Group, Inc.*, 2003 WL 21303330, at *1 (11th Cir. Feb. 6, 2003) (per curiam) (employer's questions on employee's retirement plans not direct evidence of discrimination).

Additionally, the Eleventh Circuit has acknowledged that a plaintiff's burden of proof is heavier when the decision makers are also over forty years old. *Elrod*, 939 F.2d at 1471 ("[Plaintiff] faces a difficult burden here, because all of the primary players behind his termination . . . were well over age forty and within the class of persons protected by the ADEA.  [They] are more likely to be the

---

[19]Plaintiff testified that Richard Reeves, a co-worker from the electrical engineering department, and Randy Curtis in information services asked about his retirement plans. Doc. 36-4 at 37-39 (Dep. pp. 147-55).  Plaintiff further testified that Carr told plaintiff's wife that he thought plaintiff would be retiring.  However, when asked whether Carr said "anything . . . related to your age," plaintiff replied: "Jeff is a decent man.  He would never say anything about my age."  *Id*. at 39-40 (Dep. pp. 155-57).

victims of age discrimination than its perpetrators."); s*ee also Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572 (7th Cir. 1998) ("While persons of any age are capable of age discrimination, that the decision maker is older than the terminated employee is certainly significant in evaluating the evidence of discrimination."). Here, the interviewers and members of the selection committee were all the same age or older than plaintiff.  Doc. 36-22 at 4.  Thus, plaintiff's evidence is insufficient to establish that age-related animus motivated defendants' decision or that material issues of disputed fact exist.

## VI.  CONCLUSION

Having determined that there are no genuine issues of disputed fact for trial, the court hereby GRANTS summary judgment in favor of defendants on all counts and dismisses this case with prejudice.

DONE this 28th day of May, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE